Good morning, Your Honors. I may please the Court. I'd like to reserve two minutes for rebuttal time. Do you want to state your name for the record? Yes, I'll apologize. Siobhan Sheridan Ayala on behalf of Petitioner Tomas Bartolome Hernandez. There are three issues before the Court today. One of the primary issues is the due process violation that occurred with Mr. Bartolome at the asylum interview for his reasonable fear. Let me ask you a question about that since you want to start there. Why is that even an issue before me? It seems to me that we have a de novo standard of review when we get to the IJ. Do you even agree with that? Yes, that's true, Your Honor. So if we have a de novo review when we get to the IJ, then it seems to me there's really no — nothing happens in front of the asylum officer, which is at all important, because what you do in the de novo court is you come in and present your argument one more time, and everything that happened in front of the asylum officer is of no essence. Yes, actually — are you finished? Yeah. Okay. Actually, that's not how procedurally the reasonable fear review of the IJ occurs. Well, just a minute. Yeah. Did you say it was a de novo review? What does de novo review mean? A de novo review means a completely new review. And so, therefore — now, I've never been in one of these courts before, so I have to take it to my court. We have a traffic court. If you don't like what happens in traffic court, you can go to another magistrate and you get de novo review. In the de novo review in the magistrate court, you just present all your evidence again. So what happened in traffic court makes of no essence whatsoever. It's irrelevant. That's correct. However, in this situation, the procedures of the de novo review — it's not actually a de novo review. What the immigration does is he relies heavily on the transcript of the interview questions that the asylum office conducts with the petitioner. And so he does — he reviews those questions, and then he asks a couple of clarifying questions. The attorney is not actually even allowed to present testimony. The judge — The attorney shouldn't be presenting testimony. Yeah. Well, I'm sorry. Of their client. The honest truth is that what happens is he gets the record, and when he gets the record, the petitioner is in front of him, and he asks all the questions he wants of the petitioner. So in any — and the attorney, as I understood it in this case, was said, do you want to add anything? Do you want to do anything with this? Do you want to give me anything else? And he said no. And so the IJ had the chance at that point to get everything in front of him that they wanted to present, and at that point made the determination. Why is it that there is any problem that happens in front of the asylum officer? Why? It's prejudicial to the presentation of — Why? In this specific case, the petitioner did — was foreclosed from presenting part of his asylum case. Well, but he could have presented it in front of the IJ. And that's exactly what he did. And so, therefore, no prejudice. But the IJ, if you read the transcript of the proceeding, the IJ even views the attorney as superfluous. He says we're not always able to accommodate attorneys in these matters. Well, I understand that. But if you can present all the evidence again, why is there any prejudice? Because, like I said, what the IJ does is he reviews — he relies heavily on the notes of the asylum officer for presentation of the facts. And those notes were completely devoid of the fact that he was politically involved and was the president of a cooperative that — He could have presented that to the IJ. And he did. And so, therefore, it doesn't matter what happened with the asylum officer. The IJ is in charge. Right. But then the IJ projected his own first world view. There was no evidence. Well, I can appreciate that you're going to go to the problems the IJ had. And I can even get with you on that. My only questions are, why are we talking about what happened in front of the asylum officer when the IJ has the noble review? If it was a substantial evidence review and that's all it was, I think your argument would be pretty good, because the IJ would have to address every one of the arguments. But where it's de novo and you get to do everything again, why is there a problem? Well, Your Honor, I would just submit to the court — Do I have a case that says there's a problem? No, there is no case that says there's a problem. That's the problem that I have, is that it doesn't seem to me there's a case. And I have the government's — well, I have all the documents that say it's de novo review. And I don't give the asylum officer any deference. It's all the IJ. And now it's coming to me. So if you go after the IJ's problems, I can say I have to think about those. But I'm still having a tough time understanding why I have to deal with the underlying problem. And if you've given me everything you've got, then you've given me everything you've got. Well, Your Honor, right. Unfortunately, I don't have statistics regarding the affirmation of — Well, statistics wouldn't matter. Well, the affirmation of the IJ's — of the asylum officer review. I just know that in practice there's a lot of deference that's given to the asylum officer determination. And the de novo review, the applicant is not allowed to present, like I said, testimony. They can present anything they want. Well, they can't. As a matter of fact, the IJ asks the attorney if the attorney wants to ask any questions through the IJ. Okay. So let's move to the IJ. Okay. Because it seems to me there's your biggest argument. The IJ is going to be appealed to me. Right. And so, therefore, it seems to me then we have some arguments to be said about whether there's due process violations. Right. Exactly, Your Honor. And the IJ, a respondent or petitioner is entitled to a neutral fact finder. And in this case, the IJ projected his understanding of the way that the Guatemala system works onto a situation where factually it wasn't supported. Isn't that irrelevant, really? Well, it is. Because the honest truth is we're only talking about a credibility determination, aren't we? Actually, he was found, the petitioner was found to be credible. I understand that. And so, therefore, I don't know why all those excess comments that were given really has anything to do with what we're really talking about here. Well, it's in the IJ decision. I understand that, but it really doesn't come. What was the IJ really determining? The IJ was determining whether or not he found, he was found to be credible and he was determined whether or not he was at risk of fear. And he was found to be credible. Right. But Mr. Bartolome testified or provided testimony that the, in his motion to reopen because the translation was faulty at the IJ review, that he was threatened to be machete, assassinated with machete. And so if, in the IJ. Is there a due process violation as to inability to have enough time to present evidence in front of the IJ? Absolutely there is, Your Honor. Yes. Why didn't they ask for a continuance? Because the review needs to be completed under the regulations in 10 days. So? And so it was completed within 10 days. The IJ offered another date. There was a brief continuance for interpreter and for the attorney. If they had the right for the continuance, just because they don't get enough time to present the evidence, why is that a problem? Well, because the 10 days in the regulation, the court has to look at it in terms of Matthews v. Eldridge. I understand. Yes. Okay. I could not go to the Supreme Court and say I didn't have enough time to present evidence if I didn't ask for a continuance and have that denied. If I had asked for a continuance and had that denied, I might have a thing to say when I go up on appeal that it's a due process violation. But where I don't even ask for a continuance and I don't even ask for it to be different, why do I have a due process violation in that instance? Because it would have been moot to ask for a continuance because the regulation provides only 10 days. The review needs to be completed within 10 days. But the IJ gave them opportunity. But what happens is he only gave an opportunity in order for an adequate interpreter to be there. What the petitioner – yes. I'm not following you. Okay. What evidence did your petitioner seek to uncover and present which required more than 10 days to present? Yes. What happened is it was remedied through the motion to reopen that was filed. And there was an expert opinion that was provided to the court by Dr. Thomas Borman. And Mr. Borman – Dr. Borman, excuse me, presented evidence that what the petitioner was saying was valid and it's a common occurrence in Guatemala. He provided evidence that – Your expert witness was vouching for the credibility of your petitioner? Is that what the expert was doing? He was verifying that what the petitioner stated actually occurs – those sorts of things occur in Guatemala. And was there a motion for continuance to allow Dr. Borman to come in? There was a motion to reopen that was filed. So I guess the answer to my question is no, there was no motion to continuance to allow Borman. Right. Why wasn't Borman available? He was available after. There's a 90-day window to file a motion to reopen. Why wasn't he available at the IJ hearing? Oh, there was only two or three days of continuance that was granted. And where was Borman? He wasn't even in the picture yet. So if he wasn't in the picture yet, you wouldn't have had a ground for moving to continue to provide Borman. Well, it's not clear the – there was no way to know ahead of time the IJ's bias until he ruled on the situation, on the case. So what is the next violation? Due process, besides not having enough time to present evidence. Well, those are the primary due process complaints. That's the primary thing, isn't it? Right. So if I get past that, then I get to the motion to reopen, right? Yes. So you suggest that the IJ, there should be a motion to reopen. Well, there is a statutory right to a motion to reopen. Is there a statutory right or is it a regulatory right? No, it's statutory. Where is it? Let's see. 8 U.S.C. 1229. Oh, sorry, that's – I don't have the site right off the top of my head. I apologize to the court. Well, frankly, here's what I found, and I'm just trying to make sure. I found in 8 U.S.C. 1229 AC7 that an alien may file one motion to reopen the proceedings. Yes, that's right. But then what I'm really finding is that there's a regulatory right because – and the regulatory right is that the IJ has a discretion to reopen which is on Lugo Resendez. They also, under Enrique Alvarado, have the panel could say or it seems to me the panel could say that there is no legal standard against what to say that you can't reopen for. So if I have a right to reopen and I don't – and the regulations allow this reopening, then it seems to me you're suggesting it should have been reopened. Exactly right. And you're saying that there was a due process violation for saying I can't reopen. Yes, it's an abusive discretion. And let me ask you this. If he said you can't reopen, and he said what? He said – I believe he said that there was no jurisdiction for a motion to reopen. No, what he said was under 1229 A.C. that the motion to reopen applies to removal proceedings, not reasonable fair hearings. Right. And this was a reasonable fair hearing. Exactly. Was he wrong? Yes, he was, Your Honor. Why? What case says that? Ayala v. Sessions in 2017. The court found that the IJ in that situation abuses discretion. It was actually only a review of an expedited removal, not an actual removal order like there was at issue in this case. And in that case, the court found that the Petitioner, trying to reopen the expedited removal order by presenting new evidence, had a right to reopen that case. In the removal proceedings. Right, in reinstatement proceedings. But this was not a reasonable fair hearing. Yes, it was. Yes. Ayala was. Yes. Is that what you're saying? It was, yes. That's what I thought you were saying. No relation to me. Okay. And one of the issues since... It's interesting to me that he said that he lacked jurisdiction and said only the DHS had the authority. What was he saying? Yeah, he believes that there could be a separate request to reopen to the Asylum Office, which actually Petitioner did take that step and that was also denied. So what he was saying there is you got to go back to the Asylum Officer? Yes, exactly. And I'm not... Well, doesn't 1208.31 not allow the DHS or the Asylum Officer to reopen or consider the decision? Well, as a matter of practice, they do that. They reopen cases when additional... Even though that's what it says under the regulation? Yes. Yes. Okay, thank you. I'm out of time. All right. Thank you very much. May it please the Court. Nancy Cantor on behalf of the Attorney General. Your Honor, I seem to be as enamored with the reinstatement of removal statute as we are, but the process is complicated. Well, the problem comes, I guess, just to be fair to you. Okay. I got no case law to help me. Yes. And so you guys are putting me in something that I've never had any experience before. You get to make the law. That's why I'm asking these questions. Well, I'm happy to kind of explain the process to the Court. So when an alien subject to a removal order leaves the country, the removal order is deemed executed. When that individual reenters the country, that prior removal order can be reinstated against the alien by a DHS official. But the alien has a right to a reasonable fear determination. If they express a fear of removal, they do have a right to reasonable fear. Which is what happened here. And that's exactly what happened here. This Court in Morales v. Cuierdo has recognized that reinstatement of removal is not just simply a species of regular removal proceedings, but it is an entirely separate procedure by which DHS can quickly and efficiently remove an individual who has previously been determined removable, has left the country, and has illegally reentered. The position we find ourself here today is that Petitioner previously entered the United States in 1994, filed for asylum, had a full and complete hearing before the immigration judge, and an appeal to the board. Petitioner was then or Petitioner then left the United States, at some point illegally reentered, and was issued an expedited removal order. He was removed, and it is his third illegal — it is his third reentry that resulted in the reinstatement of the prior executed — prior expedited removal order. But even with all that history, and I appreciate your history because that's where I was. Okay. It still seems to me, under this procedure, he is allowed, nonetheless, to go to the asylum officer and have his argument. Asylum officer takes his case, goes through it, and then he's allowed to go to the IJ on a de novo review, as I understand it. Correct. And as I understand it further, then, if it's a de novo review in front of the IJ, what happens in the asylum office is really of no essence. Correct. Don't you agree? The asylum officer's decision, yes, is not what the IJ is relying upon. It is a de novo review, and the alien does have — in this case, certainly, the alien did have the opportunity to present evidence and his claims for protection. So, at that point, I don't have to look at what happened in front of the asylum officer, really. I have to look at what's happening in front of the IJ. I mean, really, for due process violations, because the IJ doesn't have to rely on anything that happened in front of the asylum officer. He's going to get all the evidence again, kind of like traffic court. Okay, Your Honor. Okay, so then, at that point, I'm looking at the due process violations as it relates in the IJ proceeding. Okay. And if I get to that, then the first one they allege he didn't have enough time to present his evidence, and I said, well, you didn't ask for a continuance. You could have. Why is that a due process? How do you respond? Well, I agree, Your Honor. In this case, they received one continuance for an interpreter. But throughout the hearing, the IJ gave Petitioner ample opportunity to testify. And at the conclusion of the hearing, even asked Petitioner's counsel if she had any additional evidence that she wanted to present, to which she said no. Was there any mention of Dr. whatever's name, Debono? There was not, Your Honor. All right. So at that point, we get some new evidence. Let's just claim it's new evidence. Okay. I'm not sure it really is. But we get some new evidence, and we want to file a motion to reopen. Okay. Now, there could be evidence, which is not like this, something you could have gone and got before, but something that happens about you're arrested at home, your family's arrested at home, all this kind of stuff, that could come in. You're saying there's no motion to reopen? There is no mechanism. The statute does not provide a mechanism for filing of a motion to reopen before the immigration judge. But just a minute. This is why I asked the question. Doesn't the statute itself say that an alien may file one motion to reopen? That's in 81229AC7? Correct, Your Honor. But that's for regular removal proceedings. That's INA240 proceedings, not INA241 reinstatement of removal. But doesn't it say in 8CFR1003.23B1 that the I.J. has sua sponte jurisdiction to reopen any case in which he has made a decision? The I.J. and I believe I want to speak briefly on Ayala. The I.J. does have sua sponte reopening authority. So in Ayala, what happened was the I.J. exercised that sua sponte reopen. The question of whether or not an alien has a right to reopen was not presented in Ayala. Immigration judges, as a matter of practice, can sua sponte reopen these proceedings. But an alien doesn't have a right to demand reopening because the reopening provision is only under 240 proceedings. Well, I guess when I read 103.23B1, it doesn't say to me that you cannot reopen. It says you can reopen any case you want in which you've made a decision. So if you can reopen any case you want in which you've made a decision, I'm still having a tough time understanding why a motion to reopen can't be filed. To be honest, Your Honor, the Attorney General hasn't actually spoken on the question of whether or not on the authority issue. I can tell you as a matter of practice, immigration judges reopen cases, reopen reinstatement proceedings when a motion to reopen is filed. And that's exactly what happened in Ayala. An immigration judge reopened. In this case, the immigration judge denied it for lack of authority. But they do it all the time. They do. And I also worry that he said he didn't have any authority and only the DHS has authority. And then I read in 1208.31 that the DHS or the asylum officer doesn't have any authority at all. Well, Your Honor, the government's position is that DHS has the inherent authority. Their prosecutorial discretion allows them to reopen. How do they do that? Under what authority do they have that? I believe we addressed that in footnote 825 of the government's brief, where DHS's inherent authority allows them to reconsider or reopen a motion to reopen filed in connection with the reinstatement. That's 1208.30G24? Correct. I believe so. Incredible fear determinations? Well, it's DHS. I mean, I read that, and it doesn't seem to me that that's suggesting in any way that the DHS has any authority. Well, I think Petitioner's Counsel and I can probably agree on the fact that DHS does and frequently will reopen or consider motions to reopen, and that's the agency's position is DHS has the inherent authority as part of their prosecutorial discretion to do that. But what we've got here is if the IJ says, I don't have the authority, he's wrong. That's a matter of law. The government disagrees. Well, I just laid it out. I don't know why he doesn't. Is it the situation that he has the authority to respond to open, but he doesn't have the authority, as he has under 240 proceedings, to reopen? Correct. He doesn't have the right to demand. The alien does not have a right to demand reopening, but an IJ can. The IJ can reopen, but an alien doesn't have a right to demand reopening. The position is that the IJ reopens under a corresponding authority, but he doesn't have statutory or regulatory authority to reopen in a reinstatement removal case. I believe so, Your Honor. All right. Well, what worries me about that is that if we come in with all this, I mean, we don't have it in this particular instance, maybe, because all we've got is an expert report that might have been able to come in before. What if there's arrests being made? What if he's got a warrant for his arrest and the government has been killing people? At that point, you're saying he can't get a motion to reopen to the IJ? I mean, I'm having a tough time with that. Well, Your Honor, I would be. Especially since IALA seems to have just allowed it. The issue, again, the issue was not presented in IALA. The court assumed without deciding that the immigration judge had the authority to reopen. That was not, whether or not an alien has a right to file a motion to reopen, was not presented before the court. So that's all I can say about IALA. As a practical matter, individuals frequently file motions to reopen with immigration judges, and as we see in IALA, immigration judges do grant them. Whether or not an alien has to demand it by statute or regulation, that's something that the government does not believe is there. I can tell you also that we have no right in that. Well, a motion to reopen is a discretionary remedy. I understand it's discretionary. But, again, I'm trying to figure out if I have any right in that. If I have any right to say you've got to do it, I mean, certainly if it's a legal error or a constitutional error, I'll have a right because I can find it in any way. This is worrisome to me because in everything we've found, it's a motion to reopen, and IJs do it all the time. I have never found anything, and, of course, we don't have a lot of evidence. I've never found that the IJ says, I don't have the right, I don't have the authority. They either do it or they don't. Well, I have just, I guess, two responses to that, Your Honor. One, in everything this Court has found on motions to reopen where the issue has actually been squarely addressed, those have risen under 240 proceedings. We don't have any law under 241. The closest we have is IALA where the issue was not presented or briefed before the Court. And, two, even if we look at it under an abuse of discretion standard, even assuming that the IJ had authority and it was incorrectly granted, the abuse of discretion standard would not be met here. Well, I understand, but if he says, I don't have the authority and he's wrong, then at that point I can undo him. That's a legal error, and I can get in that case. But if he says, in my discretion, I'm not doing it, then I can't get in. But in this case, he said, I don't even have any authority. And that's the question that I think she raises specifically as to, and allows me in because it's a legal remedy. Your Honor, all I would say is that Petitioner was able to file a motion to reopen with USCIS, which was denied. And Petitioner would have had other remedies to further pursue that, but they did not. They have not submitted go to district court with a denial by USCIS. They did not pursue that. So, in other words, and I never have thought about this, so this is interesting. So, in other words, the USCIS, that denial, they could have gone to district court. Correct. There's no question they could have gone. I believe so, Your Honor. What remedy would he seek from USCIS? They can seek a declaratory action or I think a 15-0 for them to consider the claims. The claim for reinstatement of removal? No, his claim for withholding and cap protection, because that was the basis for filing to seek further review of the USCIS denial. We're not in asylum. Right. We don't have asylum. These are not allowed for asylum. Asylum is not allowed in these. Correct. Asylum is off the table for individuals in 241 proceedings. Does the Court have any other questions for me? Thank you for coming. Okay. Thank you. And I say thank you to her, too, but this has been a lot of learning. All right. We'll give you a minute for rebuttal. Okay. I just wanted to speak with Your Honors just to clarify the issue about motions to reopen. There are a number of different grounds to file a motion to reopen. One is just a statutory right within 90 days of the proceeding where new evidence has been found. Another is in absentia. And then there's another for asylum, which is based on changed circumstances. But we're not in an asylum case. Well, that's one of the points I wanted to make to Your Honors, is that under Perez, Guzman v. Lynch, it was found that an applicant or petitioner cannot file for asylum in reinstatement removal proceedings. But we're asking the Court, because there is a changed circumstance argument made in the motion to reopen, that he be allowed to apply for asylum. Because as a matter of wasted resources, otherwise he'd have to file a motion to reopen with the original I.J. who made the decision in a completely separate proceeding. But I would think, I mean, I'm just going to tell you, it seems to me that that's at least a better proceeding than what you've got here. Well, that's true. Yes. That's a lot better. We've got some law that tells you where you go. Okay. Here, we're. Right. Thank you, Your Honors. Thank you very much. All right. The case of Dr. Romero v. Sessions is submitted. And that brings us to the end of our session for today. We stand in recess until tomorrow morning at 9 o'clock. Thank you very much.
judges: Bea, N.R. Smith, Nye